UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE          DIVISION

AMY PONDER GRAHAM                    CIVIL ACTION NO. 11-609

VERSUS                               DISTRICT JUDGE JAMES

MACKIE HAMILTON                      MAGISTRATE JUDGE KIRK

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss filed by defendant, GM Canada, **Doc.** #25 referred to me by the district judge for report and recommendation. The motion seeks dismissal based on lack of personal jurisdiction over the defendant.

## Background

Plaintiff, Amy Graham, is a Louisiana resident and sued defendant, GM Canada, a Canadian corporation, among others, in state court alleging that defendant, GM Canada, sold a defective 2002 Chevrolet Camaro to Kathy Hamilton, resulting in the death of Mrs. Graham's child, Alexis Diane Ponder, as well as Mrs. Hamilton and her infant son. The suit was removed to this court by defendant. Defendant, GM Canada, claims that this court has no personal jurisdiction over it.

## Discussion

GM Canada is a Canadian company with its principal place of business in Oshawa, Ontario, Canada. After the bankruptcy of General Motors in 2009, GM Canada has been the manufacturing arm of a new company, General Motors Holdings, LLC. Distribution of automobiles is made by General Motors, LLC, also a subsidiary of General Motors Holdings, LLC.

1

At the time the subject vehicle was manufactured, GM Canada was a wholly owned subsidiary of General Motors Corporation, which purchased the vehicles from GM Canada and then distributed the vehicles in the United States.

The burden to make a prima facie showing that the defendants have meaningful contacts with Louisiana rests with the plaintiffs. Revell v. Lidov, 317 Fed. 3d 467 (5th C. 2002); International Shoe Co. v. State of Washington 66 S. Ct. 154, (1945); Wilson v. Belin, 20 Fed. 3d 644 (5th C. 1994), cert. den., 115 S. Ct. 322. The court must accept plaintiffs' uncontroverted allegations as true, but it may consider affidavits and other documentation resolving conflicts in favor of claimant. See Guidry v. U. S. Tobacco Co., Inc., 188 Fed. 3d 619 (5th C., 1999); Revell, supra.

Federal courts in Louisiana may exercise jurisdiction over a non-resident defendant only to the extent allowed by Louisiana's Long Arm statute and as consistent with due process. Stripling v. Jordan Production Co., LLC, 234 Fed. 3d 863 (5th C. 2000). Louisiana's long arm statute extends jurisdiction to the constitutional limits of due process. La. R.S. 13:3201(B).[1]  Burstein v. State Bar

---

[1] Louisiana's long arm statute provides:

"§3201. Personal jurisdiction over nonresidents
A.     A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this   State.
(3) Causing injury or damage by an offense or quasi
    offense committed through an act or omission in this
    State.
(4) Causing injury or damage in this state by an offense   or quasi offense
    committed  through an act or omission  outside of this state if he regularly does or

of California, 693 Fed.2d 511 (5ᵗʰ C. 1982).  Jurisdiction consistent with due process exists where the defendant has purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." Mink v. AAAA Development LLC, 190 Fed. 3d 333, 336 (5ᵗʰ C. 1999) (quoting International Shoe., supra).

As the Fifth Circuit explained in Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465 (5ᵗʰ C. 2006), the Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts may be established either through contacts sufficient to assert specific jurisdiction or contact to assert general jurisdiction. Alpine View Co. Ltd. v. Atlas Coco AB, 205 Fed. 3d 208, 214 (5ᵗʰ C. 2000). Where a defendant has "continuous and systematic general business contacts" with the forum state,  Helicopteros Nacionales de Colombia, S.A. v. Hall, 415, 104 S.Ct. 1868,  (1984), the court may exercise "general" jurisdiction over any

---

> solicits business, or engages in any other persistent course of  conduct, or derives revenue  from goods used or  consumed or services rendered in this state.
> (5) Having an interest in, using or possessing a real   right on immovable property in  this state.
> (6) Non-support.
> (7) Parentage.
> (8) Manufacturing of a product or component thereof which  caused damage or injury  in this state.
> B.      In addition to the provisions of Subsection A, a court of  this state may exercise personal jurisdiction over a  nonresident on any basis consistent with the constitution of this state and of the constitution of the United  States."

action brought against that defendant. Id. at 414, 104 S.Ct. 1868 n. 9.FN2 Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, 104 S.Ct. 1868 n. 8.

Only where a non-resident defendant has "purposely directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities" are the defendants' contacts sufficient to support the exercise of specific jurisdiction over that defendant. Burger King v. Rudzewicz, 105 S. Ct. 2174 (1985). Stated differently, specific jurisdiction exists where a defendant 'purposely avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits of its laws." Dickson Marine, Inc. v. Panalpina, Inc. 179 Fed. 3d 331 (5th C. 1999).

In this case, plaintiff argues that GM Canada imported the vehicle into the United States and then "transferred the vehicle to General Motors Corp. through its dealer, Waller-Singer Chevrolet in Winnsboro, Louisiana" where Kathy Hamilton bought it. She also argues that the vehicle in question was manufactured for sale in Louisiana, and that GM Canada purchased parts which were manufactured in Louisiana. Finally, citing "stream of commerce" language in World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. at 567 (1980), plaintiff suggests that it would strain logic to believe that GM vehicles were imported into every state except Louisiana and that GM Canada knew that some of its vehicles might end up in Louisiana. Plaintiff claims that these actions are sufficient minimum contacts to vest this court with jurisdiction.

Prior to the Supreme Court's decision in June, 2011 in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011), guidance in this circuit in the area of personal jurisdiction was provided by the Fifth Circuit's decision in Luv N' Care, Ltd. v. Insta-Mix, Inc. et al, 438 F.3d 465

(5th C. 2006) a case arising in this district and division. In that case, the Fifth Circuit, like some other courts, found jurisdiction to exist where the manufacturer had placed its goods into the "stream of commerce" knowing that they might wind up in Louisiana. The Supreme court in McIntyre held that the "stream of commerce metaphor" cannot supersede the Due Process Clause, holding that:

> The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

The court further explained that a state's exercise of power requires some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." It continued: In products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with "traditional notions of fair play and substantial justice."

The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.' See Burger King v. Rudzewicz, 471 U. S. 462, 474 (1985) (citing International Shoe Co. v. Washington, 326 U. S. 310, 316 (1945). As the court in Revell v. Lidov, 317 F.3d 467 (5th C. 2002), noted, "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* [Louisiana][2], it is not doing business *in* [Louisiana][3]."

---

[2]  Texas in original.

[3]  Texas in original.

Although professing only to claim specific jurisdiction as a basis for jurisdiction in this case, in brief, plaintiff also argues that general jurisdiction over GM Canada may exist. The only evidence of general, systematic contacts with Louisiana by GM Canada is plaintiff's claim that it purchased parts that were made by  manufacturing facilities in Louisiana. However, the proof falls short of evidencing direct purchases from Louisiana. Similarly, the fact that, over the years, GM Canada's cars found their way into Louisiana is alone not sufficient, under the Supreme Court's analysis in McIntyre, to prove general jurisdiction.

In addition, the corrected affidavit of Matthew Crossley, Director of Canadian Engineering at GM Canada, shows that GM Canada does not do business in Louisiana, vehicles it made in 2002 were  purchased by General Motors Corporation who imported them into the United States, GM Canada does not control where or how the vehicles are distributed in the U. S., GM Canada does not warrant the vehicles, nor does it certify them as complying with U. S. statutory requirements such as safety statutes, it has never maintained any dealerships nor has it engaged in selling, marketing, advertising, distributing, warranting, inspecting, or testing products in Louisiana or in the United States. Further, Mr. Crossley attests, GM Canada has never had a business or any offices, factories, employees, agents, representatives, distributors or subsidiaries in Louisiana, has never had real or personal property in Louisiana, has never had a bank account in Louisiana nor a mailing address or telephones, has never been registered or licensed to do business in Louisiana, and has never solicited business, sold or attempted to sell goods or services in Louisiana.

I find that there is not sufficient evidence of continuous, systematic contacts sufficient to invoke general personal jurisdiction over GM Canada in Louisiana.

6

In regard to specific jurisdiction, the Fifth Circuit has adopted a three part test: 1) whether the defendant purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there, 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts, and 3) whether the exercise of personal jurisdiction is fair and reasonable. Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374 (5th C. 2002) In order to be held to have purposefully availed itself of the privilege of conducting business, the defendant's conduct must show that it "reasonably anticipates being haled into court" in Louisiana. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Luv N' Care, Ltd. v. Insta-Mix, Inc. et al, 438 F.3d 465 (5th C. 2006)

Here, plaintiff's evidence also falls short. First, there is no evidence that ownership of the vehicle involved in the crash was transferred in Louisiana.  As the affidavit of Mr. Crossley indicates, the vehicle in question was transferred to General Motors Corporation and then imported into Louisiana by General Motors Corporation, not GM Canada. Further, the  invoice to which plaintiff refers  only shows that the vehicle was transferred to General Motors Corporation  and that the ultimate dealer was to be Waller-Singer Chevrolet in Winnsboro, Louisiana. Neither is there evidence that the vehicle was manufactured specifically for sale in Louisiana. Plaintiff has misinterpreted the answer to a request for admissions on which it relies and which reflects only that GM Canada's records reflected, before the accident, that the car had been destined for sale in Louisiana. Therefore, I find that the Nuovo Pignone test is not met and specific jurisdiction does not exist.

7

For the foregoing reasons, because neither general nor specific personal jurisdiction is present, IT IS RECOMMENDED, that defendant GM Canada's's Motion to Dismiss be GRANTED, and that plaintiffs' claims against it be dismissed.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 31st day of January 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

8