# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **AMY K PONDER CUMMINS GRAHAM** | **CIVIL ACTION 3:11-609** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **MACKIE H. HAMILTON, ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

## RULING

Pending before the Court is a products liability claim filed by Plaintiff Amy Graham ("Graham") against Defendants General Motors of Canada ("GM Canada"); Motors Liquidation Company GUC Trust, formerly known as General Motors Corporation ("GM Corporation"); Mackie H. Hamilton ("Mr. Hamilton"), widower of Kathy Hamilton ("Mrs. Hamilton"); and Peggy Brinkley ("Brinkley"), among others. Graham initially brought this action in state court on November 7, 2007, and GM Corporation removed the case to this Court on April 15, 2011. Mr. Hamilton and Brinkley asserted cross-claims against a number of Defendants, including product liability claims against GM Canada. Subsequently, Graham settled and was terminated from this action. Therefore, Mr. Hamilton and Brinkley (collectively "Plaintiffs") are now plaintiffs against GM Canada.

GM Canada filed a Motion to Dismiss for Lack of Jurisdiction on August 9, 2012. [Doc. No. 25]. Magistrate Judge Kirk issued a Report and Recommendation ("Report") on January 31, 2012 [Doc. No. 53], recommending that this Court grant GM Canada's motion. Plaintiffs filed an Objection to Magistrate Judge's Report and Recommendations on February 14, 2012 [Doc. No.

63].  GM Canada filed a Response to Objection to Magistrate's Report & Recommendations

("Response") [Doc. No. 65] on February 20, 2012.  For the following reasons, the Court

DECLINES TO ADOPT the findings and conclusions set forth in the Magistrate Judge's Report

and Recommendation, and GM Canada's Motion to Dismiss is DENIED.

**I.      BACKGROUND**

Plaintiffs allege that GM Canada manufactured a defective 2002 Chevrolet Camaro and

transferred the vehicle to GM Corporation through Waller-Singer Chevrolet in Winnsboro,

Louisiana.[1]  Mrs. Hamilton purchased the allegedly defective vehicle from the dealership.  On

January 20, 2007, Mrs. Hamilton was driving the vehicle on Interstate 20 in Monroe, Louisiana,

when her vehicle struck a tractor trailer and subsequently collided with the concrete wall between

the eastbound and westbound lanes.  Following the initial collision, she was thrown from the

vehicle and suffered fatal injuries.  The vehicle also caught fire, resulting in the deaths of two

children in the vehicle.

Magistrate Judge Kirk found that this Court lacks specific jurisdiction because Plaintiffs

failed to demonstrate that GM Canada had sufficient minimum contacts with Louisiana.

Magistrate Judge Kirk found that GM Canada first transferred the vehicle to GM Corporation,

which then delivered the vehicle to the Louisiana dealership.  Magistrate Judge Kirk also found

that GM Canada did not produce the vehicle specifically for sale in Louisiana and that Plaintiffs

did not demonstrate GM Canada knew the vehicle would be shipped to a dealership in Louisiana.

---

[1]GM Canada disputes that ownership of its vehicles shifts only at the time of delivery.  Instead, GM Canada claims that GM Corporation purchases the vehicles in Canada before they are imported. Magistrate Judge Kirk found that ownership transferred prior to the vehicle's arrival in Louisiana.  Since the shift in ownership is not dispositive in this case, the Court need not resolve this issue.

In making this latter determination, Magistrate Judge Kirk rejected Plaintiffs' interpretation of GM Canada's response to their Request for Admission No. 7.  The request stated, "Before the accident in question, GM Canada was aware that the vehicle in question had been sold, consigned, or provided to a dealership in Louisiana."  [Doc. No. 40-4, 4].  GM Canada responded,

> Prior to the January 20, 2007 accident in question, GM Canada manufactured-in-part and completed the final assembly of vehicles.  Some of those vehicles were sold to General Motors Corporation and imported into the United States by General Motors Corporation.  GM Canada did not determine or control where or how those vehicles were distributed within the United States.  GM Canada's records indicate the 2002 Chevrolet Camaro, VIN 2G1FP22K722147474 was built for General Motors Corporation to sell to a dealership in Louisiana.  Otherwise, GM Canada denies this Request for Admission.

[Doc. No. 40-4, p. 4].  In evaluating the response, Judge Kirk found that it merely indicates "that GM Canada's records reflected, before the accident, that the car had been destined for sale in Louisiana." [Doc. No. 53, p. 7].

## II.    LAW & ANALYSIS

In their Objections to the Report, Plaintiffs emphasize that they are merely required to make out a prima facie case for jurisdiction, and the Court should construe controverted facts in favor of jurisdiction.  Plaintiffs argue that the Court should not adopt the Report because Magistrate Judge Kirk did not correctly interpret the Response to Request for Admission No. 7, which reasonably indicates that GM Canada knew the vehicle at issue would be sold in Louisiana.

Plaintiffs also argue that requiring GM Canada to litigate in Louisiana is fair and reasonable because GM Canada has systematic contacts with Louisiana.

In its Response, GM Canada argues that Plaintiffs have not met their prima facie burden in establishing jurisdiction because GM Canada did not target Louisiana.  GM Canada also argues that it does not have systematic contacts with Louisiana, and, therefore, requiring it to litigate in Louisiana is not fair and reasonable.

In Louisiana, federal courts sitting in diversity jurisdiction may exercise jurisdiction over a non-resident defendant only to the extent permitted by Louisiana's long-arm statute.  *Stripling v. Jordan Production Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citations omitted).  Louisiana's long-arm statute extends jurisdiction to the constitutional limits of due process.  LA. REV. STAT. § 13:3201(B); *Burstein v. State Bar of California*, 693 F.2d 511, 517 (5th Cir. 1982) (citing *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5th Cir.1980)).  Due process requires that a Defendant have minimum contacts with the forum state.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).  What constitutes minimum contacts with a forum state has long been a subject of dispute among the courts. *Compare World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (indicating that placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may suffice for minimum contacts) *with Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 112-13 (1987) (plurality opinion) (indicating that a defendant may need to intentionally target a forum before a court finds minimum contacts).

In *Asahi Metal Industry Co. v. Superior Court of California*, a fractured Court addressed minimum contacts.  There, Justice O'Conner, writing for four justices, determined that

4

foreseeability that a defendant's product would end up in a forum state, without more, was insufficient to find minimum contacts. *Id*. at 112-13 (plurality opinion). Justice Brennan, also writing for four Justices, determined that such foreseeability would be sufficient. *Id*. at 116-17 (Brennan, J., concurring). The *Asahi* decision has resulted in a split among the circuits. As the Fifth Circuit has noted, "Some circuits follow Justice O'Connor's analysis while other circuits follow Justice Brennan's analysis." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 373 (5th Cir. 2010) (citations omitted). The Fifth Circuit, however, has adopted Justice Brennan's analysis. *Id*. In the Fifth Circuit, a defendant has minimum contacts with the forum state when a defendant "knowingly benefits from the availability of a particular state's market for its products . . . ." *Luv N' Care*, 438 F.3d 465, 470 (5th Cir. 2006) (citing *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980)); *see also Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) ("Under this 'relatively expansive' theory, only 'mere foreseeability' that a defendant might be haled into court because it purposely availed itself of the benefits of the forum state is required. A defendant need not have 'purposely direct[ed]' its activities to the forum." (citations omitted)).

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court again evaluated the requirements for minimum contacts. *McIntyre* considered a challenge to a decision of the New Jersey Supreme Court that found personal jurisdiction over a British manufacturer which sold its products in the United States through an intermediary. *Id*. at 2786. The plaintiffs could only demonstrate that one of the products reached the forum state, and, in the view of the Court, they did not adduce any additional evidence indicating the manufacturer should have reasonably anticipated being haled into court in New Jersey. *Id*. at 2792. The plurality

5

opinion in *McIntyre* would have required that a defendant target a forum state before a court could

find minimum contacts, which would overrule the Fifth Circuit's specific jurisdiction precedent.

*Id*. at 2788 (plurality opinion).  This opinion, however, did not command a majority of the justices

and is not binding on this Court.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a

fragmented Court decides a case . . ., 'the holding of the Court may be viewed as that position

taken by those Members who concurred in the judgments on the narrowest grounds . . . .' (quoting

*Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))).  Justice Breyer's concurrence, which is

binding, ruled that the New Jersey court did not have specific jurisdiction over the foreign

manufacturer under existing precedent and declined to adopt a new rule.  *Id*. at 2792-93; *see also*

*Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236, 2011 U.S. Dist. LEXIS 109255, at *19 (S.D.

Miss. 2011) ("As Justice Breyer declined to choose between the *Asahi* plurality opinions,

*McIntyre* is rather limited in its applicability. It does not provide the Court with grounds to depart

from the Fifth Circuit precedents." (citations omitted)).[2]

   In his general discussion of the law governing specific jurisdiction, Magistrate Judge Kirk

cites *McIntyre*'s plurality opinion as controlling precedent.  Magistrate Judge Kirk notes that

*McIntyre* requires this Court to find that a defendant targeted the forum state before finding

specific jurisdiction over the defendant. Relying on this case law, Magistrate Judge Kirk found

---

   [2]Some district courts in the Fifth Circuit have concluded that *McIntyre* overrules the Fifth
Circuit's prior minimum contacts precedent.  *See, e.g., Keranos, LLC v. Analog Devices, Inc.*, No.
2:10-CV-2072011, 2011 Dist. LEXIS 102618, at *30 (E.D. Tex. 2011) (indicating that after *McIntyre*
defendants must follow "'a course of conduct directed at the society or economy existing within the
jurisdiction of a given sovereign'" before a court finds minimum contacts (quoting *Hanson v. Denckla*,
357 U.S. 235, 253 (1958))).  Other district courts, however, have concluded that pre-*McIntyre* Fifth
Circuit precedent continues to apply.  *See, e.g., Ainsworth*, 2011 Dist. LEXIS 2011, at *11 (". . .
*McIntyre* has little to no precedential value.").  The Fifth Circuit has not addressed this issue.

that the Court does not have specific jurisdiction over GM Canada.  In making this determination, Magistrate Judge Kirk noted the absence of evidence that GM Canada targeted Louisiana, and that GM Canada transferred ownership of the vehicle to GM Corporation before the vehicle entered the United States.

Since *McIntyre*'s plurality opinion did not command a majority of the justices, Magistrate Judge Kirk appears to have required a more demanding showing of Plaintiffs than is necessary, specifically that GM Canada target Louisiana.  Instead, under *Luv N' Care*, Plaintiffs are merely required to demonstrate that GM Canada should have foreseen that its product would be marketed in the forum state.  Plaintiffs have satisfied this burden by offering GM Canada's Response to Request for Admission No. 7, which can fairly be interpreted to indicate that GM Canada knew the vehicle at issue was destined for sale in Louisiana prior to transferring the vehicle to GM Corporation.  Although this evidence may be subject to alternative interpretations, "[t]his court must resolve . . . facts contested in the affidavits, in favor of jurisdiction."  *Luv N' Care*, 438 F.3d at 469 (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

Further, although Justice Breyer's concurrence in *McIntyre* is binding on this Court, the instant case is factually distinguishable from *McIntyre*.  In *McIntyre*, Justice Breyer emphasized that "[n]one of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient [to find minimum contacts]."  *McIntyre*, 131 S. Ct. at 2792 (Breyer, J., concurring).  There, the British defendant likely sold only a single machine that ended up in New Jersey.  *Id*. at 2786.  Here, Plaintiffs have offered evidence demonstrating that GM Canada places over 800,000 vehicles into the U.S. market each year, indicating that many of GM Canada's vehicles would likely be sold in Louisiana.  *See also Bean Dredging Corp. v. Dredge*

7

*Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984) (ruling in favor of jurisdiction based in part on the foreign manufacturer's decision to place thousands of its component parts into the U.S. market without any "attempt to limit the states in which its [components] would be sold and used . . . ."); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) (exercising jurisdiction based in part on the foreign manufacturer delivering millions of its products to a distributor with the intention that the distributor would place the products into national retail outlets).  Therefore, the Court finds that the *McIntyre* concurrence does not govern the facts of this case.

In addition to minimum contacts, due process also requires that the Court determine whether the cause of action arises out of GM Canada's forum-related contacts, and whether the exercise of personal jurisdiction is "fair and reasonable."  *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  Here, the products liability claim rests on injuries sustained due to the allegedly defective vehicle manufactured by GM Canada and subsequently sold in Louisiana.  Therefore, the Court finds that the cause of action arises out of GM Canada's forum-related contacts. Finally, based on the financial benefits that accrue to GM Canada because of the availability of Louisiana as a market for its products, the proximity of Canada to Louisiana, and the absence of any contrary argument by GM Canada, the Court finds that exercising personal jurisdiction is fair and reasonable.

III.   **CONCLUSION**

Based on the foregoing, the Court DECLINES TO ADOPT the findings and conclusions

set forth in the Magistrate Judge's Report and Recommendation [Doc. No. 53].

GM Canada's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 25] is DENIED.

MONROE, LOUISIANA, this 15th day of March, 2012.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**