UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| AMY K PONDER CUMMINS GRAHAM | CIVIL ACTION 3:11-609 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MACKIE H. HAMILTON, ET AL. | MAG. JUDGE JAMES D. KIRK |

RULING

Pending before the Court are three Motions for Summary Judgment filed by Defendant General Motors Liquidation Company GUC Trust, formerly known as General Motors Corporation ("GM Corporation"), and joined by General Motors of Canada ("GM Canada") (collectively "Defendants"). For the following reasons, Defendants' Motion for Summary Judgment Regarding Claims Made by Kathy Hamilton's Heirs is GRANTED IN PART and DENIED IN PART. [Doc. No. 54]. Defendants' Motion for Summary Judgment Regarding the Claims Made by Joshua Hamilton's Heirs is GRANTED IN PART and DENIED IN PART. [Doc. No. 57]. Defendants' Motion for Summary Judgment Regarding the Claims Made by Peggy Brinkley is DENIED. [Doc. No. 58].

I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Mackie Hamilton, Peggy Brinkley, and Marlan Crafts (collectively "Plaintiffs") allege that GM Canada manufactured an unreasonably dangerous 2002 Chevrolet Camaro and transferred the vehicle to GM Corporation through Waller-Singer Chevrolet in Winnsboro, Louisiana. Kathy Hamilton ("Mrs. Hamilton") purchased the allegedly defective vehicle from the

dealership. On January 20, 2007, Mrs. Hamilton was driving the Camaro on Interstate 20. Mrs. Hamilton's daughter, Brittany Baker, was located in the left rear seat. Mrs. Hamilton's son, Joshua Hamilton, was located in the right rear seat and restrained in a child seat. A third child, Alexis Ponder, was seated in the right front seat.

Mrs. Hamilton was initially traveling in the right lane and attempted to change lanes in front of a semi-trailer truck. The rear of Mrs. Hamilton's Camaro contacted the right front of the semi. The Camaro went into a counter-clockwise spin, and the left front of the Camaro contacted the interstate's dividing wall. After contacting the wall, the Camaro continued to rotate, and the right rear of the Camaro contacted the wall, causing the rear of the vehicle to become elevated onto the wall and contact an overheard sign pole. Afterwards, the Camaro rotated down the wall making contact with the left side of the semi.

At some point during the sequence of collisions, the left door, which was unlocked, became open, and Mrs. Hamilton was ejected through the door onto the road, despite having her seat belt fastened. When the vehicle contacted the pole, the gas tank ruptured. This caused a post-collision fuel-fed fire that Plaintiffs claim engulfed the Camaro fifteen to thirty seconds after the car came to a stop.[1] Brittany Baker was able to climb out of the vehicle without any serious injuries. Joshua Hamilton and Alexis Ponder perished in the fire.

Plaintiff Amy Graham, mother of decedent Alexis Ponder, initially filed suit in state court on November 7, 2007, against GM Corporation; Mackie Hamilton, widower of Mrs. Hamilton;

---

[1]Plaintiffs emphasize in their Opposition to Motion for Summary Judgment that the driver of the semi was able to slowly stop the semi, place a phone call, and begin taking pictures before the car erupted into flames. Plaintiffs argue that this sequence of events demonstrates that there was a fifteen to thirty second period after the Camaro came to rest when Mrs. Hamilton could have rescued her children.

Peggy Brinkley, legal tutrix of Brittany Baker, heir of Mrs. Hamilton; and Marlan Crafts, natural tutor of Coleton Crafts, heir of Mrs. Hamilton; among others. GM Corporation removed the case to this Court on April 15, 2011. Mackie Hamilton, Peggy Brinkley, and Marlan Crafts asserted cross-claims against GM Canada and GM Corporation. Subsequently, Amy Graham and a number of defendants were terminated from this action. Therefore, Mackie Hamilton, Peggy Brinkley, and Marlan Crafts are now plaintiffs against GM Canada and GM Corporation.

Plaintiffs assert design defect claims under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 9:2800.51, *et seq*, against Defendants. Specifically, Plaintiffs allege that the door latch was unreasonably dangerous in design because the door latch mechanism would allow the unlocked door to open during an accident. Plaintiffs allege that if the door had remained closed, Mrs. Hamilton would have survived the accident and rescued the children before they perished in the fire. Plaintiffs also allege that the fuel system was unreasonably dangerous in design because it did not adequately protect against a post-collision fuel-fed fire. Plaintiffs state that if Defendants appropriately designed the 2002 Camaro to protect against a post-collision fuel-fed fire, the Camaro would not have caught on fire, and the children would have survived.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v.*

*Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255

  **B. Plaintiffs' burden under the LPLA for design defect claims**

At the outset, the parties dispute which party must demonstrate each of the elements of LA. REV. STAT. § 9:2800.56. Under LA. REV. STAT. § 9:2800.56, a plaintiff may recover damages from a product that is unreasonably dangerous in design only when "(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product."

Section 9:2800.54(D) of the LPLA provides that "claimant has the burden of proving the elements of [unreasonably dangerous design under § 9:2800.56]." LA. REV. STAT. §

9:2800.54(D).  Nonetheless, "[w]hether a product is unreasonably dangerous, and thereby is defective, is a question of fact to be made by the factfinder."  *Hines v. Remington Arms Co.*, 648 So. 2d 331, 335 (La. 1994).  Viewing the evidence in the light most favorable to Plaintiffs, the Court will grant summary judgment against Plaintiffs only when Defendants demonstrate an absence of a material issue of fact.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

    **C.**    **Claims Made by Kathy Hamilton's Heirs**

With regard to the claims of Kathy Hamilton's heirs, Defendants argue that this Court should grant summary judgment in their favor because Plaintiffs have not offered sufficient proof that Mrs. Hamilton was killed by the injuries she sustained when ejected from the vehicle.  Therefore, Defendants argue that Plaintiffs have not demonstrated Mrs. Hamilton's fatal injuries were caused by the allegedly unreasonably dangerous door latch design.  In support, Defendants note that Dr. Frank Peretti ("Dr. Peretti"), the forensic pathologist who performed Mrs. Hamilton's autopsy, "could not distinguish between the injuries that [Mrs. Hamilton] sustained while inside the car before she was ejected and those she sustained outside the car after she was ejected." [Doc. No. 54-2].  Defendants state that Plaintiffs must offer expert testimony as to this essential element of a claim under the LPLA.

Plaintiffs argue that they have offered sufficient evidence that Mrs. Hamilton survived the initial collision and suffered additional injuries as a result of being ejected from the vehicle.  In support, Plaintiffs note that Mrs. Hamilton did not die until the day after the accident.  Plaintiffs also note that a witness stated Mrs. Hamilton's eyes were open and she was gurgling as she lay on the side of the interstate after the accident.  Further, Dr. Peretti stated Kathy Hamilton "probably

[died from] a combination of both" injuries that she sustained in the Camaro and injuries suffered after she was ejected.

Under the LPLA, Plaintiffs are required to demonstrate that the alleged damages are "proximately caused by a characteristic of the product that renders the product unreasonably dangerous." LA. REV. STAT. § 9:800.54(A). Defendants cite to a number of cases where courts have required expert testimony under the LPLA to demonstrate proximate causation. *See*, *e.g.*, *Caboni v. General Motors Corp.*, 398 F.3d 357 (5th Cir. 2005). Each of these cases concerned allegedly defective air bags that failed to deploy during an accident. In *Caboni*, the Fifth Circuit Court of Appeals required expert testimony as to proximate causation because "'whether or not the failure of the driver's side air bag to deploy "enhanced" plaintiff's injuries, is not a part of the everyday experience of the consuming public. Thus, jurors would need expert testimony to evaluate this issue.'" *Caboni*, 398 F.3d at 361 (quoting *Battistella v. Daimler-Chrysler Motors Co.*, No. 03-2286, 2004 U.S. Dist. LEXIS 10884, *8 (E.D. La. 2004)).

The Court finds that Plaintiffs have presented sufficient evidence on proximate cause. Plaintiffs have submitted the deposition of Dr. Peretti, who stated that Mrs. Hamilton probably suffered fatal injuries due in part to her ejection from the vehicle. Defendants have not offered any evidence contradicting this expert witness's opinion.

Next, Defendants argue this Court should grant partial summary judgment in their favor because the driver's door was unlocked at the time of the crash and therefore not in a reasonably anticipated use. Defendants state that the owner's manual instructs users to lock the doors when traveling and that failure to do so increases the chance of ejection. Defendants state that they "were entitled to expect that an ordinary consumer will comply with the warnings and instructions

provided with a product." [Doc. No. 54-2, p. 5]. Further, Defendants note that the vehicle was equipped with electronic door locks, and, therefore, Mrs. Hamilton could have easily locked the doors.

In response to Defendants' arguments on whether driving with unlocked doors is a reasonably anticipated use, Plaintiffs only state, "Vehicle crashes are reasonably anticipated. Ejection of passengers are anticipated. Driving with doors unlocked is anticipated. The only issue is whether this wreck is so catastrophic and so unusual that no reasonable manufacturer could ever foresee the need to provide protection." [Doc. No. 67, p. 6]. Plaintiffs do not offer any evidence that people frequently drive or ride in vehicles with unlocked doors.

The LPLA imposes liability for damages caused by unreasonably dangerous products only when such damages arise from a "reasonably anticipated use of the product." LA. REV. STAT. § 9:2800.54(A). The LPLA explicitly defines reasonably anticipated use: "'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. REV. STAT. § 9:2800.53(7). In assessing whether a use is reasonably anticipated, courts consider whether the manufacturer has given a clear warning against such use. *Kampen v. American Isuzu Motors*, 157 F.3d 306, 314 (5th Cir. 1998). Nonetheless, use contrary to such a warning does not mandate that a court find the injuries did not result from a reasonably anticipated use. *Id.* Instead, a "warning against a 'product *misuse*' is relevant to assessing what uses of its product a manufacturer reasonably anticipates." *Id*.

The Court finds that driving with unlocked doors is a reasonably anticipated use. Although plaintiffs have not put forward any evidence as to the number of people who drive or

ride in vehicles with unlocked doors, the Court takes judicial notice that a significant number of drivers without automatic door locks drive with their doors unlocked. Under Federal Rule of Evidence Rule 201(b), the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction." FED. R. EVID. 201(b). It is generally known that a substantial number of people drive with their vehicle doors unlocked. Further, driving an automobile with the doors unlocked does not rise to the level of misuse that courts typically exclude from reasonably anticipated uses. *See*, *e.g.*, *Spears v. Cintas Sales Corp.*, 414 Fed Appx. 667, 670-71 (5th Cir. 2011) (ruling that exposing a mechanic's uniform to a flame after the mechanic used a rag soaked in gasoline is not a reasonably anticipated use) (per curiam) (unpublished); *Myers v. American Seating Co.*, 93-1350, (La. App. 1 Cir. 5/20/94); 637 So. 2d 771, 775 (ruling that a user standing on the back of a folding chair causing it to collapse was not a reasonably anticipated use).[2]

Next, Defendants argue this Court should grant partial summary judgment in their favor because Plaintiffs have not offered expert testimony demonstrating that Mrs. Hamilton's seat and restraint system were unreasonably dangerous. Plaintiffs state in their Opposition to Motion for Summary Judgment that they are not alleging the seat and restraint system were defective. Instead, Plaintiffs emphasize that they are only arguing that the door and fuel system were defective. Since Plaintiffs have clarified that they did not intend to allege that the seat and restraint system were defective, Defendants' Motion for Summary Judgment Regarding the Claims Made by Kathy Hamilton's Heirs is GRANTED to the extent that Plaintiffs' claims can be

---

[2]The Court is taking judicial notice without notifying the parties in advance. Federal Rule of Evidence 201(e) provides that the parties may file a challenge to the propriety of the judicial notice with regard to this fact.

construed to include allegations of defective design with regard to the seat and restraint system.

Next, Defendants argue this Court should grant partial summary judgment in their favor because Plaintiffs have not offered evidence sufficient to demonstrate that Mrs. Hamilton sustained conscious pain and suffering after she was ejected from the vehicle. In support, Defendants offer the testimony of a witness that checked Mrs. Hamilton's pulse immediately after the accident. This witness stated that Mrs. Hamilton did not seem to be aware of her surroundings. Plaintiffs argue that Mrs. Hamilton did suffer conscious pain and suffering. In support, Plaintiffs note that Mrs. Hamilton did not die until the day after the accident and that a witness stated Mrs. Hamilton's eyes were open and she was gurgling as she lay on the side of the interstate after the accident. Further, Plaintiffs emphasize that Mrs. Hamilton was "only ejected well into the collision sequence," which certainly would have caused her to fear for her safety for at least a brief period of time. [Doc. No. 67, p. 3].

A survival action permits recovery for conscious pain and suffering from the time of an injury until death. *Cavalier v. State*, 2008-0562 (La. App. 1 Cir. 9/12/08); 994 So.2d 635, 645 (citations omitted). To recover, a plaintiff must put forward evidence of the conscious suffering. *Etcher v. Neumann*, 2000-2282, (La.App. 1 Cir. 12/28/01); 806 So.2d 826, 840 (noting that plaintiffs must offer at least "the smallest amount of evidence of pain, however brief, on the part of the deceased, based on his actions or otherwise . . . .") (citations omitted). As the Court of Appeal of Louisiana First Circuit has noted, "Generally, survival damages are warranted if plaintiff presents any evidence ('a scintilla') of pain or suffering on the part of the decedent." *Etcher*, 806 So.2d at 840 (citations omitted).

The Court finds Plaintiffs have offered at least a scintilla of evidence that Mrs. Hamilton

was conscious following the accident. Therefore, Defendants' Motion for Summary Judgment Regarding the Claims Made by Kathy Hamilton's Heirs is DENIED with regard to Mrs. Hamilton's conscious pain and suffering. Plaintiffs, however, may not recover for Mrs. Hamilton's pain and suffering before she was ejected because that pain and suffering would not have been caused by the allegedly defective door.

### D. Claims Made by Joshua Hamilton's Heirs

With regard to the claims of Joshua Hamilton's heirs stemming from the allegedly unreasonably dangerous fuel system, Defendants argue that Plaintiffs have not submitted evidence sufficient to demonstrate that the utility of their proposed alternative fuel system design outweighs the burden of adopting the alternative design. Plaintiffs do not address this argument in detail. Instead, Plaintiffs merely cite to the whole of the report submitted by their expert, John Stilson ("Stilson"), an engineer with experience in automotive design.

In his report, Stilson provides a very detailed analysis of the vulnerabilities of the 2002 Camaro fuel system design. Stilson notes that the automotive industry has long recognized the dangers of a rear pole impact on vehicles with an aft-of-axle underslung plastic fuel tank. Although most vehicles, including the 2002 Camaro, are designed to withstand rear impact with a broad object, such as another vehicle, vehicles with the fuel system design utilized in the 2002 Camaro are prone to dangerous levels of compression and intrusion when the vehicle encounters a narrow object, such as a pole. As Stilson explains, fuel systems like the one used here are prone to punctured fuel tanks in the case of rear pole impacts because other parts of the car are forced into the plastic tank. After examining the vehicle at issue, Stilson concluded that the tank was most likely punctured by the exhaust pipe, fuel tank straps, a tank strap bolt, or general

compression from the impact.³  Stilson states that the level of intrusion observed here could have been avoided by inclusion of a full metal guard over the fuel tank, relocation of the tank to above the axle or forward of the axle, and additional frame cross members and body structural reinforcements.  In support of this design alternative, Stilson states that he and other experts have conducted numerous field tests on vehicles to compare the performance of unguarded fuel tanks against the performance of fuel systems that incorporate his suggested improvements.  Stilson states that these tests have demonstrated that these improvements probably would have avoided the leakage of gasoline in this case.

      To recover for damages from a product with an unreasonably dangerous design, Plaintiffs must demonstrate that the "risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 181 (5th Cir. 1990); *see also* LA. REV. STAT. § 9:2800.56.  Courts typically require the level of detail and expert analysis that is necessary to allow the factfinder to effectively weigh the risk against the benefit.  In some cases, "the judge or the jury, by relying on background knowledge and 'common sense,' can 'fill in the gaps' in the plaintiff's case, estimating the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine." *Id*. at 184.  In other cases, plaintiffs will need to offer evidence that "details and quantifies the risk avoided and the burden incurred." *Id*.; *see also Thompson v. Nissan North America*, 429 F.Supp.

---

³Stilson cannot state with certainty what object punctured the tank in this case because the plastic tank was consumed in the fire.

2d 759, 775-76 (E.D. La. 2006) (indicating the plaintiffs should have incorporated a modified fuel system into an identical model of the vehicle at issue); *Lawrence v. General Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996) (finding the plaintiffs' evidence insufficient where the plaintiffs' expert merely noted that a modified throttle mechanism probably would have avoided the harm but did not "elaborate on the actual likelihood of avoiding the probable damage" or the "adverse utility effects" of the alternative design).

The Court finds that Plaintiffs have not offered sufficient evidence to demonstrate that the risk sought to be avoided by the alternative design outweighs the burden of switching to the alternative design. The complex nature of an automobile will typically require detailed, expert testimony as to the risk of harm and burden of adopting the alternative design. Although certain aspects of an automobile may be sufficiently simple that a juror would not require a detailed, quantitative analysis, redesigning a fuel system is well beyond the realm of common sense. Nonetheless, Stilson's report does not offer any risk/utility analysis. Specifically, Stilson has not discussed the frequency of these sorts of accidents, the added construction costs, or loss of product utility. Nor does it appear that Stilson considered these factors with regard to the 2002 Camaro before issuing his report. Therefore, Defendants' Motion for Summary Judgment Regarding Claims Made by Joshua Hamilton's Heirs is GRANTED to the extent that Joshua Hamilton's injuries arise from an unreasonably dangerous fuel system.

Defendants have raised a number of other grounds for summary judgment with regard to Joshua Hamilton's injuries that allegedly stemmed from the fuel system. Since the Court has granted summary judgment based on the absence of a risk/utility analysis, the Court does not need to address these remaining grounds.

With regard to the injuries Joshua Hamilton suffered due to the allegedly unreasonably dangerous door latch, Defendants argue that the Court should grant summary judgment in their favor because Plaintiffs cannot demonstrate that Joshua Hamilton survived the initial collision. Therefore, Mrs. Hamilton would not have been able to save Joshua, even if she was not ejected from the Camaro. In support, Defendants emphasize that Dr. Peretti was not able to rule out fatal head trauma to Joshua Hamilton because of the extent of the burns on his body.

Plaintiffs argue that they have submitted sufficient evidence that Joshua Hamilton survived the initial collision and perished as a result of the fire. Plaintiffs emphasize that Dr. Peretti agreed that thermal injuries were the "mostly likely cause" of Joshua Hamilton's death. This is reflected in his death certificate, which lists the cause of death as "Thermal Injuries." [Doc. No. 67-15, p. 1]. Additionally, Plaintiffs note that Joshua Hamilton was "seated in a child seat, properly restrained, in the most protected location of the vehicle during the crash sequence." [Doc. No. 67, p. 11]. The opposite side of the car made contact with the separating wall, and the child seated on that side of the vehicle did not suffer any significant injuries.

The Court finds that Plaintiffs have offered sufficient evidence to create a material issue of fact that Joshua Hamilton survived the initial collision. Plaintiffs submitted the deposition of an expert witness, Dr. Peretti, who concluded it was more likely than not that Joshua Hamilton perished as a result of the fire.[4] Additionally, Plaintiffs have noted that Joshua Hamilton was in the least damaged portion of the vehicle. Defendants have not offered any contrary evidence.

Next, Defendants argue the Court should grant partial summary judgment in their favor

---

[4] The Court is not expressing an opinion as to the admissibility of Dr. Peretti's opinion on Joshua Hamilton's cause of death. Defendants have not yet raised a *Daubert* challenge to this opinion. Dr. Peretti repeatedly stated that his findings were based on very limited evidence.

with regard to Plaintiffs' claim for Joshua Hamilton's conscious pain and suffering because Plaintiffs have not demonstrated that Joshua Hamilton was conscious following the initial collision. In support, Defendants note that Dr. Peretti did not find any evidence that Joshua Hamilton was conscious following the initial impact. Plaintiffs argue that they have demonstrated that Joshua Hamilton endured conscious pain and suffering. In support, Plaintiffs emphasize that Dr. Peretti concluded it was more likely than not that Joshua Hamilton survived the initial impact and perished from the fire. Plaintiffs also note that Joshua Hamilton was located in the portion of vehicle that sustained the least impact, and that Brittany Baker was able to climb out from the seat next to him after the collision without serious injuries.

As noted above, a survival action permits recovery for conscious pain and suffering from the time of an injury until death. *Cavalier,* 994 So.2d at 645 (citations omitted). To recover, a plaintiff must put forward evidence of the conscious suffering. *Etcher*, 806 So.2d at 840 (citations omitted). As the Court of Appeal of Louisiana First Circuit has noted, "Generally, survival damages are warranted if plaintiff presents any evidence ('a scintilla') of pain or suffering on the part of the decedent." *Id.*

The Court finds that Plaintiffs have offered sufficient evidence of Joshua Hamilton's conscious pain and suffering. Dr. Peretti concluded that Joshua Hamilton most likely perished from the fire, and Plaintiffs have noted that he was located in the least damaged portion of the Camaro. This is sufficient to constitute a scintilla of evidence that Joshua Hamilton endured conscious pain and suffering. Therefore, Defendant's Motion for Summary Judgment Regarding the Claims Made by Joshua Hamilton's Heirs is DENIED with regard to Joshua Hamilton's pain and suffering.

E.  **Claims Made by Peggy Brinkley on Behalf of Brittany Baker**

Peggy Brinkley has asserted claims against Defendants on behalf of Brittany Baker, who was in the vehicle during the accident. Baker was the daughter of Mrs. Hamilton and the sister of Joshua Hamilton. Although Baker escaped without serious physical injuries, Plaintiffs seek to recover for the damages Baker sustained by witnessing her mother and brother perish.

Defendants reassert several of the grounds for summary judgment addressed in the preceding sections of this Ruling. Therefore, the Court need not restate its conclusions as to each of these arguments. Defendants' Motion for Summary Judgment Regarding the Claims Made by Peggy Brinkley is DENIED. If Plaintiffs are able to demonstrate that an unreasonably dangerous door latch proximately caused Mrs. Hamilton's death or Joshua Hamilton's death, Peggy Brinkley may recover for the damages Brittany Baker suffered by watching her mother and brother perish.

III.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment Regarding the Claims Made by Kathy Hamilton's Heirs [Doc. No. 54] is GRANTED IN PART and DENIED IN PART. With regard to claims arising from the allegedly defective seat and restraint system, the motion is GRANTED, and these claims are DISMISSED WITH PREJUDICE. With regard to all other claims, the motion is DENIED.

Defendants' Motion for Summary Judgment Regarding the Claims Made by Joshua Hamilton's Heirs [Doc. No. 57] is GRANTED IN PART and DENIED IN PART. With regard to claims for Joshua Hamilton's injuries from the fuel system, the motion is GRANTED, and these claims are DISMISSED WITH PREJUDICE. To the extent that Plaintiffs are able to demonstrate that an unreasonably dangerous door latch proximately caused Joshua Hamilton's death,

15

Defendants' motion is DENIED.

Defendants' Motion for Summary Judgment Regarding the Claims Made by Peggy Brinkley [Doc. No. 58] is DENIED.

MONROE, LOUISIANA, this 13th day of April, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE