UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

AMY K PONDER CUMMINS GRAHAM          CIVIL ACTION 3:11-609

VERSUS                               JUDGE ROBERT G. JAMES

MACKIE H. HAMILTON, ET AL.           MAG. JUDGE JAMES D. KIRK

RULING

Pending before the Court is Plaintiffs Mackie Hamilton and Peggy Brinkley's (collectively, "Plaintiffs") Motion in Limine concerning evidence of decedent Kathy Hamilton's ("Mrs. Hamilton") marijuana use.  [Doc. No. 78].  Defendants Motors Liquidation Co. G U C Trust ("GM Corporation") and General Motors of Canada ("GM Canada") (collectively, "Defendants") filed a Memorandum in Opposition.  [Doc. No. 91].  Defendants also filed motions in limine concerning Plaintiffs' experts. [Doc. Nos. 83-87].  Plaintiffs filed a Memorandum in Opposition [Doc. No. 90], and Defendants filed replies [Doc. Nos. 109-113].

Also pending before the Court are the parties' Proposed Pretrial Order [Doc. No. 103] and Supplemental to Pretrial Order [Doc. No. 114].  This Order and Supplement contain a number of contested issues of law and objections to trial designations of deposition testimony.

I.      FACTUAL AND PROCEDURAL HISTORY[1]

In this products liability case, Plaintiffs Mackie Hamilton, widower of Mrs. Hamilton, and Peggy Brinkley, legal tutrix of Brittany Baker ("Brittany"), heir of Mrs. Hamilton, assert claims

---

[1]The facts of this case are discussed at length in this Court's Summary Judgment Ruling.  [Doc. No. 80].

against Defendants under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 9:2800.51, *et seq*, for a defective door design.[2]  Specifically, Plaintiffs allege that the door latch design used in Mrs. Hamilton's Camaro was unreasonably dangerous because it allowed the unlocked door to open during an accident.  Plaintiffs allege that if the door had remained closed, Mrs. Hamilton would not have been ejected, would have survived the accident, and rescued her child, Joshua Hamilton ("Joshua"), before he perished in the fire.

## II.     LAW & ANALYSIS

### A.     Motions in Limine Regarding Expert Testimony

Under Federal Rule of Evidence Rule 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony.  These factors include, but are not limited to, whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community.  *Id.* at 593-94.  "[T]he Supreme Court emphasized that the

---

[2]Plaintiffs also alleged defective design claims regarding the Camaro's fuel system, but the Court granted summary judgment with regard to these claims.  [Doc. No. 81].

*Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).  "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id*. (quoting *Kumho*, 526 U.S. at 152).

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.  1996) (internal quotations and citations omitted).  "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### 1.    Andrew Gilberg

Andrew Gilberg ("Gilberg") is a professional engineer with experience in automobile safety and testing.  Plaintiffs retained Gilberg to investigate this accident.  In his report, Gilberg concludes that Mrs. Hamilton was likely wearing her seatbelt at the time of the accident.

Defendants request that the Court exclude the expert testimony of Gilberg concerning 1) whether Mrs. Hamilton was wearing her seat belt during the accident and 2) whether Defendants

acted with conscious indifference.  Plaintiffs stipulate in their Memorandum in Opposition that Gilberg will not testify as to Defendants' indifference.  Therefore, this Ruling addresses only Gilberg's expert opinion that Mrs. Hamilton was wearing her seat belt at the time of the accident.

Defendants argue that Gilberg's report does not disclose the "basis and reasons" and "facts or data considered" in forming his opinion.  [Doc. 83, p. 2].  In support, Defendants emphasize that Federal Rules of Civil Procedure Rule 26 requires expert reports to disclose both.  Defendants also argue that Gilberg has not disclosed the methodology he used to reach his conclusion.  Additionally, Defendants emphasize that photographs taken at the accident scene clearly indicate that Mrs. Hamilton's seatbelt latch plate and buckle were not found buckled together after the accident, unlike the other passengers' plate and buckles.

Plaintiffs contend that the Court should not exclude Gilberg's opinion regarding Mrs. Hamilton's seatbelt.  Plaintiffs argue that Gilberg's report discloses the factual basis for his conclusion as well as the reliable methodology Gilberg used to reach his conclusion.  In support, Plaintiffs emphasize that Gilberg's report indicates he extensively examined the vehicle and pictures of the accident scene.  Additionally, Plaintiffs state that Gilberg's report clearly relies on the deformed shoulder harness, which appeared to have been torn out of the roof area.  In support, Plaintiffs include in their Memorandum in Opposition pictures of the deformed harness and an undamaged harness.  Plaintiffs state that these photos demonstrate that a physical examination of the vehicle provided an adequate basis for Gilberg's determination.  With regard to Gilberg's methodology, Plaintiffs state that Gilberg's conclusion follows directly from the deformed state of the harness: "The only way the seat belt could have exerted a force on the retractor was through movement of the body of Mrs. Hamilton *while the seatbelt was in use*." [Doc. No. 90, p. 10].

4

The Court finds Gilberg's report is based on sufficient facts.  His report demonstrates that he conducted a thorough examination of the vehicles and reviewed pictures of the accident scene. With regard to his methodology and application, Gilberg states in his report,

> Although completely burned out, the steel retractor frames remained.  The passenger side retractor was found in its normal position; however, the driver side retractor was nearly torn out of its sheet metal anchorages and bent outwards toward the door opening.

> There were also two areas along the door opening pinch weld seams that were bent outward . . . .  These were in a location and shaped so as to suggest the belts had been drawn forcefully over the flange to cause the bends.

[Doc. No. 83-2, p. 6-7].  Based on this evidence, Gilberg concludes that Mrs. Hamilton was "probably" using her seatbelt at the onset of the accident.  [Doc. No. 83-2, p.7].  Although Defendants have evidence and expert testimony that indicate Mrs. Hamilton was not wearing her seatbelt, Gilberg's report satisfies the requirements of Rule 702.  Defendants may present their contrary evidence at trial.  Accordingly, Defendants' Motion in Limine to Exclude Certain Opinions of Andrew Gilberg [Doc. No. 83] is DENIED.

### 2. Kelly Kennett

Defendants request that the Court exclude the expert opinion of Kelly Kennet.  Plaintiffs state that they will not call this witness or seek to introduce his opinion into evidence. Accordingly, Defendants' Motion in Limine to Exclude Certain Opinions of Kelly Kennett [Doc. No. 84] is DENIED AS MOOT.

### 3. Brian Frist

Dr. Brian Frist ("Frist") is the Chief Medical Examiner for Cobb County, Georgia. Plaintiffs hired Frist to determine Mrs. Hamilton's and Joshua's causes of death.  With regard to

Joshua, Frist states in his report that Joshua died from thermal injuries.

Defendants request that the Court exclude Frist's expert testimony with regard to 1) whether Joshua experienced pain and suffering by breathing in superheated air following the accident, 2) whether there was an explosion during the accident, and 3) whether Joshua experienced shock as a result of the possible explosion.

With regard to whether Joshua breathed superheated air, Defendants argue that Frist's opinion is not sufficiently reliable.  In support, Defendants emphasize that Frist did not examine Joshua's body.  Instead, Frist based his conclusions on Dr. Frank Peretti's ("Peretti") autopsy report.  Defendants note that Peretti was not able to rule out blunt force trauma as Joshua's cause of death because the extensive burns to Joshua's body would have obscured evidence of head trauma.  Defendants argue that if Peretti could not establish that Joshua survived the initial collision, Frist's opinion that Joshua survived the initial collision and subsequently breathed in superheated air is necessarily unreliable.

Plaintiffs argue that Frist's conclusions are reliable.  In support, Plaintiffs state that Peretti did reach a conclusion as to Joshua's death.  Plaintiffs emphasize that Peretti concluded Joshua died from thermal injuries.  Although Peretti stated it was possible that Joshua perished before the fire erupted, he concluded it was more likely than not that Joshua perished because of the fire.  Additionally, Plaintiffs note that Frist is a board-certified anatomic and clinical pathologist and that he frequently is called on to express an opinion upon a decedent's cause of death without conducting an autopsy.  Instead, Frist frequently relies on medical records, as he did in this case.

The Court finds Frist's opinion that Joshua experienced pain and suffering from breathing

6

superheated air is reliable.  Frist is the Chief Medical Examiner for Cobb County, a county that

Frist states has a population of approximately 750,000.  Although Frist was not able to examine

Joshua's body, he states that he commonly uses medical records, accident reports, and other

information received from law enforcement and rescue workers to determine causes of death.  In

this case, Frist states that he reviewed the autopsy reports, records of the police and fire

departments, photographs of the accident scene, and numerous depositions.  Frist's report

demonstrates that Frist largely based his opinion on the minimal amount of intrusion into the

passenger compartment, Joshua's age, seating location, and child seat.  Frist notes in his report

that Brittany was seated in the portion of the vehicle that sustained the most significant, albeit

minimal, damage and was able to climb out of the vehicle without serious injuries.  For Frist,

Brittany's lack of injuries indicates that a child seated in a less damaged location would also

would have survived the collisions.  Although an expert could review the evidence and reach a

different conclusion, Frist used a reliable methodology in reaching his determination.

Next, Defendants request that the Court exclude Frist's opinion that "in all medical

probability, there was an explosion associated with the fire" and Joshua may have experienced

shock as a result of this explosion.  [Doc. No. 85-1, p. 4].  In support, Defendants state that Frist

is not qualified to express an opinion on whether there was an explosion.  Defendants also state

that Frist's report fails to provide both the factual basis and the methodology he used to form this

opinion.  Therefore, Defendants state that Frist's opinion is mere speculation.

Plaintiffs respond that Frist's opinion with regard to an explosion was merely one of the

explanations he offered for the absence of soot in Joshua's lungs.  Plaintiffs also emphasize that

Roger Scherbeh, the truck driver with whom Mrs. Hamilton collided, stated that he heard the car

7

explode.

The Court finds Frist is qualified to make this determination and his opinion is based on sufficient facts.  As a medical examiner, Frist must use bodies and associated medical records to determine causes of death.  Here, Frist's conclusion with regard to an explosion is based on the medical records of Joshua and Alexis Ponder ("Alexis").  Additionally, Frist offers his opinion that there was an explosion as one of several explanations for the lack of soot in Joshua's lungs. In this context, Frist's opinion that there was probably an explosion will aid the jury in understanding the other evidence before it.

Finally, Defendants request that the Court exclude Frist's opinions regarding Alexis' injuries because her heirs are no longer a party to this case and therefore her injuries are irrelevant.  In support, Defendants state that under *Daubert*, expert reports must "assist the trier of fact to understand or determine a fact in issue."  [Doc. No. 85-1, p. 6] (citing *Daubert*, 509 U.S. at 592).

Plaintiffs respond that the Court should allow Frist's testimony regarding Alexis' injuries because the absence of evidence indicating she suffered blunt force trauma helps rebut Defendants' claim that Joshua died from blunt force trauma he sustained during the collisions.

The Court finds that Frist's testimony with regard to Alexis' cause of death is admissible. This evidence will help the jury understand his opinion as to Joshua's cause of death.  In his report, Frist notes that neither Joshua's nor Alexis' bodies had evidence of blunt force trauma.  In his report, Frist also notes that Brittany was seated in the portion of the vehicle that sustained the most significant damage.  The absence of evidence of blunt force trauma to Alexis, as well as her location in the vehicle, will aid the jury in evaluating Frist's opinion with regard to Joshua's

8

cause of death.  Accordingly, Defendants' Motion in Limine to Exclude Certain Opinions of Brian Frist [Doc. No. 85] is DENIED.

### 4.      Steve Jackson

Steve Jackson ("Jackson") is an accident reconstruction consultant retained by Plaintiffs to investigate Mrs. Hamilton's accident.  In his report, Jackson concludes that the Camaro only encountered a 16 to 18 miles per hour change in velocity when it hit the pole.  Jackson also concludes that Mrs. Hamilton's seat moved toward the rear of the vehicle during the accident and this loosened her seat belt.

Defendants request that the Court exclude Jackson's expert testimony with regard to the 1) the force of the impact between the Camaro and the pole, 2) whether the driver's seat was forced toward the rear of the Camaro when the Camaro hit the pole, and 3) whether such rearward movement would have substantially loosened the seat restraint.  Defendants argue that Jackson is not qualified as an expert with regard to these issues.  In support, Defendants state that Jackson's background as a state trooper investigating vehicular accidents does not qualify him to speak about these issues, which Defendants contend should be reserved for automotive engineers.

Plaintiffs argue that Jackson is qualified to speak as an expert on these issues.  Plaintiffs emphasize that Jackson has investigated 2,000 accidents as a state trooper and reconstructed 350 accidents with the Arkansas police for trials.  Additionally, Jackson has hundreds of hours of training related to accident investigation, including courses in Advanced Accident Investigation, Advanced Accident Reconstruction, and Applied Physics relating to traffic collisions.  Jackson has served as an expert witness in over 1,000 trials.

The Court finds Jackson is qualified as an expert in accident reconstruction and can offer an opinion on each of these issues.  Issues such as the force of impact and whether a seat would be pushed toward the rear of a vehicle are issues that Jackson would frequently confront during his accident investigations.  Further, Jackson has received training on these issues, including a 40-hour physics course focusing on forces involved in vehicle accidents.  There is no requirement under Rule 702 that Jackson have an engineering degree.

Defendants also argue that Jackson's report fails to demonstrate that Jackson used a reliable methodology in reaching his conclusions.  Instead, Defendants state that Jackson simply provides his conclusions without any supporting methodology.  Plaintiffs argue that Jackson's methodology is both reliable and typical of accident reconstruction experts.  With regard to the impact of the pole on the vehicle's rate of speed, Plaintiffs argue that Jackson's conclusion is based on a formula and he should not be required to recreate the accident before expressing an opinion.  With regard to whether the seat moved toward the rear of the vehicle during the accident and the effect on the restraint system, Plaintiffs state that these conclusions did not require a complex methodology.  Instead, Jackson merely had to survey the vehicle to see that the seat had moved backward and that such movement would create space between the seatbelt and Mrs. Hamilton.

The Court finds Jackson has used a reliable methodology.  Jackson's report details the series of impacts the Camaro sustained based on a review of the Camaro, police reports, eyewitness accounts, and photographs of the accident scene.  In his report, Jackson states,

> Assuming an initial speed of 70 miles per hour and energy loss components during rotation and wall contact, the Camaro's speed would have been reduced to approximately 53 miles per hour when the sign post contact occurred.  Using a

10

> barrier equivalent for average measured crush of the Camaro's rear section with
> the post of 31 miles per hour, the [change in velocity] from that contact would be
> on the order of 16 to 18 miles per hour.

[Doc. No. 54-6, p. 2].  Jackson also states in his report that this rearward impact caused the seat

to move toward the rear of the vehicle, which would have loosened the restraint.  Defendants do

not contest Jackson's initial assumption of 70 miles per hour or any of his subsequent

conclusions.  Although an expert may be able to reach a different conclusion about the forces

involved in the accident and their effect on the vehicle, Jackson reached his conclusions using

standard, reliable methodology.  Accordingly, Defendants' Motion in Limine to Exclude Certain

Opinions of Steve Jackson [Doc. No. 86] is DENIED.

### 5.    John Stilson

Defendants request that the Court exclude the expert opinion of John Stilson.  Plaintiffs

state that they will not call this witness or seek to introduce his opinion into evidence.

Accordingly, Defendants' Motion in Limine to Exclude Certain Opinions of John Stilson [Doc.

No. 87] is DENIED AS MOOT.

### 6.    Frank Peretti

Dr. Frank Peretti is the associate medical examiner for the State of Arkansas and

performs autopsies for northern Louisiana parishes.  He conducted autopsies on Mrs. Hamilton,

Joshua, and Alexis.  In his autopsy reports for Joshua and Alexis, Peretti concluded that both

perished from thermal injuries.

### a.    Joshua's Cause of Death

Defendants request that the Court exclude various portions of Peretti's testimony because

the testimony is not based on sufficient evidence and therefore not reliable under Rule 702.

11

[Doc. No. 94, p. 2-4].  In support, Defendants emphasize that Peretti stated the extensive postmortem burns to Joshua's head would have obscured any head injuries that he sustained prior to the fire.  Further, Defendants state that Peretti's decision to list thermal injuries on Joshua's autopsy as his cause of death does not necessarily mean Peretti's testimony as to this cause of death is sufficiently reliable under Rule 702.

Plaintiffs argue that the Court should not exclude these portions of Peretti's testimony because they are reliable.  In support, Plaintiffs state that Peretti acknowledged the limited nature of the evidence but reached a reliable conclusion.

The Court finds that Peretti's testimony meets the requirements of Rule 702.  Peretti has testified that thermal injuries mostly likely caused Joshua's death.  In reaching this conclusion, Peretti noted that the extensive burns to Joshua's body could have obscured evidence of other causes of death, such as blunt force trauma or a severed artery.  Peretti also explained the methodology that he used in reaching his conclusion, and Defendants have not alleged any deficiencies in his methodology or application.  Although Peretti had no choice but to form his opinion based on limited evidence, the evidence is sufficient to support his conclusion that Joshua more likely than not perished as a result of the fire.   Accordingly, Defendants' objections to trial designations of Peretti are DENIED with regard to Joshua's cause of death.

### b.    Mrs. Hamilton's use of Marijuana

Plaintiffs request that the Court exclude portions of Peretti's testimony relating to Mrs. Hamilton's toxicology report, which found that Mrs. Hamilton was under the influence of marijuana at the time of her accident.  Plaintiffs argue that these portions of Peretti's testimony are irrelevant and unfairly prejudicial.  With regard to its relevancy, Plaintiffs emphasize that

Peretti stated that he could not conclude what effect such marijuana use would have had on Mrs. Hamilton's ability to operate a vehicle.  Plaintiffs also point to the report of their pharmacology expert, James Norris.  In his report, Norris states that Mrs. Hamilton's blood and urine samples were collected thirty hours after the accident and Peretti found only "THC metabolite and not the active component of marijuana (THC)."  [Doc. No. 78-1, p. 4].   Thus, Norris states in his report, "it would be speculative to estimate the THC and/or THC metabolite values at the time of the accident."  [Doc. No. 78-1, p. 4].  With regard to the evidence's prejudicial nature, Plaintiffs state that merely allowing Defendants to mention drug use would create an "over-arching presence in jury deliberations which would cause a miscarriage of justice related to the issues of whether the Camaro was defective . . . ." [Doc. No. 78-1, p. 4].

Defendants argue that the Court should not exclude this testimony because it is relevant to important issues in this case.  First, Defendants claim that this evidence is relevant because it makes it more likely that Mrs. Hamilton acted negligently in causing the crash.  In support, Defendants state that driving a vehicle under the influence of an illegal drug is "clearly negligent" [Doc. No. 91, p. 5], and they emphasize that under La. Rev. Stat. § 9:2798(B) Plaintiffs will be barred from recovery for survival and wrongful death damages if the jury determines Mrs. Hamilton to be more than 25% at fault for her death.  Second, Defendants state that the evidence makes it less likely that Mrs. Hamilton would have been able to climb quickly into the back of the Camaro and rescue Joshua.  Defendants do not specifically respond to Plaintiffs' argument that the evidence is unfairly prejudicial.

The Court finds that evidence of Mrs. Hamilton's marijuana is relevant and not unfairly prejudicial.  With regard to relevancy, Federal Rules of Evidence Rule 401 states that evidence is

13

relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Here, this evidence makes it more likely that Mrs. Hamilton's negligence caused her injuries. The evidence also makes it less likely that Mrs. Hamilton would have been able to quickly remove Joshua from the vehicle.  With regard to its prejudicial nature, Federal Rules of Evidence Rule 403 states that the Court may exclude evidence when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  Here, evidence indicating that Mrs. Hamilton used illegal drugs certainly creates a risk of prejudicing the jurors against Plaintiffs. Nonetheless, this prejudice does not substantially outweigh the probative value of the evidence. Accordingly, Plaintiffs' Motion in Limine regarding portions of Peretti's deposition discussing Mrs. Hamilton's marijuana use [Doc. No. 78] is DENIED.

### B.      Objections to Trial Designations of Deposition Testimony

### 1.      Frank Peretti

This Ruling has already discussed Defendants' *Daubert* challenges to Peretti's conclusions as to Joshua's cause of death.  Defendants have also raised a number of relevancy and undue prejudice challenges to portions of Peretti's testimony: self-identification of attorney who is no longer participating [6:5-16]; counsel's question regarding an onlooker's statement about the position of Alexis' body after the accident [18:9-16]; comments on marking exhibits [10: 14-17]; comments regarding continuing objections [12:3-14]; questions clarifying a speaker's identity [12:18-23]; question that was restated after an objection [22:20-25].

Defendants' objections to these portions of Peretti's deposition testimony are SUSTAINED.  These portions of the deposition are irrelevant.

### 2. Sherry Hobbs

Sherry Hobbs was an eyewitness to the accident.  Hobbs states in her deposition that Mrs. Hamilton passed her vehicle moments before colliding with the semi.  Her deposition primarily concerns how Mrs. Hamilton was driving before the accident.

Plaintiffs have raised objections to Hobbs' response to counsel's question regarding whether Hobbs could tell if Mrs. Hamilton was talking on her cell phone immediately prior to the accident.  [22:19-23:22].  Plaintiffs claim this portion is hearsay, non-responsive, and leading. Defendants respond that the questions that preceded Hobbs' response clearly are not leading. With regard to the out of court statements, Defendants state that they are not being offered for the truth of the matter asserted.  With regard to the responsiveness of Hobbs' answer, Defendants state that they have not offered into evidence the portion that is not responsive.

Plaintiffs' objections to this portion of Hobbs' transcript are SUSTAINED.  Hobbs' answer is not responsive.  Counsel asked Hobbs if she had any information as to whether Mrs. Hamilton was talking on her cell phone.  Hobbs does not respond to this question.  Instead, Hobbs describes what she saw, none of which provided any information regarding Mrs. Hamilton's cell phone usage.

Plaintiffs also object to portions of Hobbs' deposition concerning how fast Mrs. Hamilton was driving when Mrs. Hamilton passed Hobbs.  [25:20-26:16].  Plaintiffs argue that these portions are hearsay, non-responsive, and leading.  Defendants argue that counsel's questions were not leading, plaintiffs did not object to the form of the question during the deposition, the portion does not contain hearsay, and Hobbs' answers are responsive.  Defendants also state that with regard to this portion, Plaintiffs did not object to Hobbs' answer on the ground of

responsiveness during the deposition.

Plaintiffs' objections to these portions of Hobbs' deposition testimony are OVERRULED.  None of the questions are leading, there are no out of court statements in this portion, and each of the answers is responsive to counsel's question.

### 3.    Mel McDowell

Mel McDowell is an accident reconstruction expert who was hired by a former party to reconstruct the accident.  McDowell's testimony focuses on the findings of his investigation and reconstruction.

Plaintiffs object to McDowell's answer regarding Ms. Hamilton's speed at the time of the accident.  [54:16-22].  Plaintiffs state that his answer is speculative and non-responsive. Defendants argue that McDowell is qualified to answer these sorts of questions.  Therefore, his answer is not impermissible speculation.  Defendants also state that counsel interrupted McDowell's answer, and the answer taken as a whole is responsive.

Plaintiffs' objection to this portion of McDowell's deposition testimony is SUSTAINED. This portion of McDowell's deposition is not responsive.  Counsel asked wether McDowell had any information about Mrs. Hamilton's rate of speed before the collision.  McDowell initially answered by dismissing counsel's question and commenting on whether Mrs. Hamilton was driving aggressively and inattentively.  Plaintiffs have not objected to the portion of McDowell's answer where he comments on her rate of speed.

Plaintiffs also object to the portion of McDowell's deposition where counsel questioned McDowell regarding his statement that Mrs. Hamilton was driving aggressively and McDowell explained why he believed she was driving aggressively.  [55: 4-17].  Plaintiffs state that this

16

portion is speculative and not responsive.  Defendants argue that this is the opinion of an accident reconstruction expert, and therefore the answer is not speculative.

Plaintiffs' objection to this portion of McDowell's deposition testimony is SUSTAINED. These responses are speculative.  McDowell is an accident reconstruction expert.  The inferences in this portion, however, are not within the scope of his expertise.  They concern inferences that should be reserved for the jury.

Finally, Plaintiffs object to the portion of McDowell's deposition where he states that he decided Mrs. Hamilton was driving aggressively based on the police report. [59:24-60:3]. Defendants argue that his answer is not speculative because he is an accident reconstruction expert.

Plaintiffs' objection to this portion of McDowell's deposition testimony is SUSTAINED. This portion is speculative.  It concerns an expert witness' opinion with regard to whether Mrs. Hamilton was driving aggressively.  This inference is outside the scope of McDowell's expertise and is an inference that should be reserved for the jury.

### C.    Contested Issues of Law

#### 1.    Availability of La. Rev. Stat. § 9:2798.4

Plaintiffs request that the Court prohibit Defendants from asserting immunity under La. Rev. Stat. § 9:2798.4 because this statute is an affirmative defense that Defendants have not pled. In support, Plaintiffs note that Federal Rules of Civil Procedure Rule 8(c)  requires Defendants to assert any affirmative defense in their responsive pleading.

Defendants respond that the Court should not bar them from asserting a § 9:2798.4 defense.  Defendants state that no case law indicates this statutory defense is an affirmative

17

defense that must be explicitly mentioned in their responsive pleading.  Further, Defendants state that they clearly indicated in their responsive pleading that they believed Mrs. Hamilton negligently caused her damages.  Defendants also state that Plaintiffs have known for years that Mrs. Hamilton was under the influence of marijuana at the time of the accident.

Louisiana Revised Statute § 9:2798.4 provides that no person "shall be liable for damages . . . for injury, death, or loss of the operator of a motor vehicle . . . who: . . . (2) Was operating a motor vehicle . . . while he was under the influence of any controlled substance described in Rev. Stat. § 14:98(A)(1)(c)  or Rev. Stat. § 40:964."  The statute further requires that 1) the operator have acted negligently, 2) that more than 25% of such negligence be attributable to the controlled substance, and 3) that the operator's negligence was a contributing factor in causing the damage. § 9:2798.4(B).

Federal Rules of Civil Procedure Rule 8(c) requires a party to set forth affirmative defenses in its answer.  Failure to raise a defense in an answer may result in a waiver.  *Simon v. United States*, 891 F.2d 1154, 1157 (5th Cir. 1990) (citing *Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 990 n. 11 (5th Cir. 1984)).  Failure to properly raise an affirmative defense in an answer need not result in a waiver if the defense is otherwise raised in a pragmatically sufficient time and the plaintiff is not prejudiced in his ability to respond.  *Simon*, 891 F.2d at 1157 & 1159 (5th Cir. 1990); *Lucas v. United States*, 807 F.2d 414 (5th Cir. 1986); *Allied Chem. Corp. v. Jack Mackay, d/b/a Mackay Farms, Ltd.*, 695 F.2d 854, 855-56 (5th Cir. 1983).  "Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise."  *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987).  A party is not prejudiced if he can adequately confront and defend against the defense.  *Lucas*, 807 F. 2d at 418; *Theunissen v. GSI Group*, 109

18

F.Supp. 2d 505, 509 (N.D. Miss. 2000).

The Court finds that even if § 9:2798.4 is an affirmative defense, Defendants may assert a defense under this statute because it was raised in a pragmatically sufficient time.  Defendants asserted Mrs. Hamilton's negligence as a defense in their responsive pleadings.  Although Defendants did not explicitly mention Mrs. Hamilton's drug use in their initial pleadings, Defendants included this defense in the Proposed Pretrial Order.  Plaintiffs have long been on notice of Mrs. Hamilton's drug use because this was noted in Peretti's autopsy report.  Finally, Plaintiffs have not demonstrated why allowing Defendants to assert this defense would create unfair surprise.  Instead, Plaintiffs appear to have anticipated this affirmative defense because they retained an expert to offer a second opinion as to whether Mrs. Hamilton was under the influence of marijuana at the time of the accident.

### 2.    GM Canada's Status as a Manufacturer under the LPLA

Defendants request that the Court rule GM Canada is not a manufacturer under the LPLA.  In support, Defendants state that GM Corporation was the sole designer of the allegedly defective door.  Plaintiffs respond that the Court should rule that GM Canada is a manufacturer.  In support, Plaintiffs cite La. Rev. Stat. § 9:2800.53, which defines a manufacturer under the LPLA.  Plaintiffs also state that GM Canada "actually manufactured the car and labeled the car as having been manufactured by them."  [Doc. No. 101, p. 2].

Louisiana Revised Statute § 9:2800.53 defines a manufacturer as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce."  Under the statute, "'Manufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product."  The statute also includes

19

in the definition of manufacturer "a person or entity who labels a product as his own or who

otherwise holds himself out to be the manufacturer of the product."

The Court finds that GM Canada qualifies as a manufacturer under the LPLA.  GM

Canada does not dispute that it constructed the Camaro.  This is sufficient under § 9:2800.53.

Further, GM Canada appears to have held itself out as the manufacturer of the Camaro by placing

a label on the vehicle identifying the company as the vehicle's manufacturer.

### 3.      Exclusive Remedy

Defendants request that the Court rule the LPLA is the exclusive remedy in this case.

Although this request is listed in the Pretrial Order's contested issues of law, Plaintiffs do not

appear to dispute that the LPLA is the exclusive remedy.  Further, La. Rev. Stat. § 9:2800.52

states that the LPLA "establishes the exclusive theories of liability for manufacturers for damage

caused by their products."  Therefore, the Court finds that the LPLA provides the exclusive

remedy.

### 4.      Solidary Obligation

Defendants request that the Court find they are not solidary obligors for any alleged

damages.  Defendants argue that under La. Civ. Code art. 2324 their liability should be divisible

based on their respective degrees of fault.  Plaintiffs request that the Court find Defendants are

solidary obligors.  Plaintiffs argue that both defendants are strictly liable under the LPLA to

Plaintiffs for harm arising from the allegedly defective door.  Therefore, "each is responsible for

the same obligation to users of the product."  [Doc. No. 101, p. 3].  Plaintiffs argue that the

singular nature of the obligation requires that the Court hold Defendants liable as solidary

obligors.  In support, Plaintiffs cite La. Civ. Code arts. 1789, 1794, 1797, 1800, and 1815, which

govern obligations with multiple persons under Louisiana law.  Since these statutes are typically applied to contractual cases, Plaintiffs argue that in this case the "'object' of performance is the manufacture of a vehicle that is not unreasonably dangerous . . . ."  [Doc. No. 101, p. 4].  Therefore, Plaintiffs state that the Court should hold that Defendants are solidary obligors.

Article 2324 provides that where two or more tortfeasors' unlawful actions result in damages to a plaintiff, such tortfeasor's liability may be either in solido or joint and divisible:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation . . . .

LA. CIV. CODE. ART. 2324(A)-(B).  This division of liability is applicable to products liability claims under the LPLA.  *See*, *e.g.*, *United Fire Group v. Simplex Grinnell, L.P.*, 2008 U.S. Dist. LEXIS 29238 (E.D. La. 2008) (applying article 2324 to a products liability claim).

The Court finds that Defendants' obligations are joint and divisible.  Plaintiffs have not alleged a conspiracy by Defendants.  Therefore, liability is not solidary and must be joint and divisible under art. 2324.  The statutes cited by Plaintiffs deal with obligations under Louisiana contract law.  Plaintiffs have not provided a single case where a court applied one of these statutes to a products liability case.

### 5.  Pleadings

Defendants request that the Court bar Plaintiffs from seeking recovery based on Joshua's death because such damages were not adequately pleaded in Plaintiffs' Answer and Cross-

Claim.[3]  In support, Defendants note that Federal Rule of Civil Procedure Rule 8(a)(2) requires the Complaint to include a "'short and plain statement of the claim showing the pleader is entitled to relief.'" [Doc. No. 95, p. 2].  Plaintiffs request that the Court allow them to recover damages for Joshua's death.  In support, Plaintiffs state that the summary judgment ruling in this case already addressed this issue.  Plaintiffs also state that they included these allegations in their Answer and Cross-Claim.  Finally, Plaintiffs state that these issues were clearly discussed in their expert reports, which were provided to Defendants at a much earlier stage in this suit.

Federal Rules of Civil Procedure Rule 8(a)(2) requires that a plaintiff recite a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To comply with Rule 8, a plaintiff's statement of his claim "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (other citations omitted)).  "Whether a complaint gives reasonable notice of a claim is a 'pure question of law.'" *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001) (citing *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n. 2 (11th Cir. 1997)).

The Court finds that Plaintiffs' Answer and Cross-Claim provided sufficient notice to Defendants under Rule 8(a)(2).  In their Answer and Cross-Claim [Doc. No. 1-4], Plaintiffs allege that the deaths of both Mrs. Hamilton and Joshua were caused by "the actions and

---

[3]Plaintiffs Mackie Hamilton and Peggy Brinkley were initially defendants in this action.  The original plaintiff is no longer a party.  Therefore Mackie Hamilton and Peggy Brinkley are now pure plaintiffs.

inactions of defendant [GM Corporation], in failing to design and/or manufacture a crashworthy vehicle." [Doc. No. 1-4, p. 6].  This is sufficient under the notice pleading standards of Rule 8(a)(2) to encompass the possibility that Mrs. Hamilton could have saved Joshua if she had not been ejected through the door.

### 6.    Relative Severity of Injuries of Different Occupants

Plaintiffs seek to introduce evidence of the relative severity of Brittany's injuries to demonstrate that Joshua survived the collisions.  Brittany was seated in the backseat of the Camaro on the driver's side.  Joshua was harnessed into a child seat in the back seat on the passenger's side.  After the collision, Brittany climbed out of the vehicle without significant injuries.  Joshua did not survive.  According to Plaintiff's expert reports and Plaintiff's court filings, Brittany was located in the portion of the vehicle that sustained the most damage.

The Defendants request that the Court prohibit Plaintiffs from arguing that Joshua most likely survived the collisions in part because Brittany survived the collisions.  In support, Defendants state that similar evidence has been excluded from other automotive crashworthiness cases.  Defendants cite *Perkins v. Volkswagen*, 596 F.2d 681 (5th Cir. 1979), and *Cheek v. Gen. Motors Corp.*, 1989 WL 8843 (E.D. La. 1989).

Plaintiffs request that the Court allow them to cite Brittany's survival as evidence that Joshua survived the collisions.  In support, Plaintiffs emphasize that the "crush forces on the Camaro were more proximately located near [Brittany] and not [Joshua], and because [Brittany] did not sustain any injuries, the jury should be able to review the evidence and make a decision whether [Joshua] would have been saved." [Doc. No. 101, p. 7].  Further, Plaintiffs argue that the cases cited by Defendants merely indicate that the trial court has discretion to exclude this

23

evidence.

"The trial court has wide discretion in determining whether evidence is relevant and admissible." *Perkins*, 596 F.2d at 682.  In the cases offered by Defendants, trial courts excluded evidence of relative injuries.  In *Perkins*, the Fifth Circuit ruled that a trial court did not abuse its discretion in finding that evidence of relative injuries in an automotive crashworthiness case was irrelevant.  *Id*.  In *Cheek*, a trial court confronted a similar situation and cited *Perkins* as dispositive of the issue.

The Court finds that evidence of the relative severity of injuries is admissible.  Nothing in the Fifth Circuit's holding in *Perkins* indicates that evidence of relative severity is always irrelevant, and the use of relative severity evidence in this case is significantly different from the proposed use in *Perkins*.  There, an individual was injured when another car penetrated the front panel of the van in which the individual was traveling.  *Id*.  Although unclear from the case, the other vehicle appears to have made contact directly where the plaintiff was seated.  The plaintiffs sought to introduce evidence of relative severity evidence to "promote the inference that, had the front panel not been defective, [the plaintiff] would have been relatively uninjured."  *Id.*  Since the other vehicle struck the opposing vehicle directly where the injured party was seated, the passengers in the car were not similarly situated, and relative severity evidence would not have been probative.  In this case, however, Plaintiffs have offered expert testimony that Joshua was seated in the most protected location.  Therefore, when the relative severity testimony demonstrates that an unharmed child was seated in a location that sustained more damage than the location of the decedent, such evidence is relevant to determining whether the decedent survived the collision.

### 7.    Proximate Cause

Defendants request that the Court prohibit Plaintiffs from seeking recovery for Joshua's death based on the allegedly defective door because the alleged defect was not the legal or proximate cause of Joshua's death.  In support, Defendants state that the facts of this case are an "unusual occurrence" and "too remote" to satisfy proximate case.  [Doc. No. 103, p. 9].

Plaintiffs request that the Court allow them to seek recovery for Joshua's death based on the allegedly defective door.  Plaintiffs argue that the alleged defect proximately caused Joshua's death.  In support, Plaintiffs state that determining proximate cause is a fact intensive inquiry. Therefore, Plaintiffs state that the Court should withhold its judgment until Plaintiffs present their case at trial.  Plaintiffs also offer a number of hypothetical scenarios that they believe are analogous to the present case and would satisfy proximate cause.

In defining proximate cause, the Supreme Court of Louisiana has stated:

> The [proximate cause] inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The [proximate cause] inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.  In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.

*Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 293-94 (La. 1993) (internal quotations and citations omitted).

The Court finds the risk of a mother not being able to rescue her child after an accident is encompassed in the scope of Defendants' duty not to design a defective door.  Defendants have cited a number of cases where Louisiana courts have determined the risk of the injury suffered by

plaintiffs was not within the scope of the duty owed to those plaintiffs.  In each of these cases, the harm was highly attenuated from the duty owed.  For example, in *Russell v. St. Tammany Parish Sch. Bd.*, 2011-0855R, p. 13 (La. App. 1 Cir. 3/13/2012); 2012 La. App. Unpub. LEXIS 98, at * 9, the Louisiana First Circuit Court of Appeal ruled that a school board's duty to notify a student's guardian of a suspension did not encompass the risk that the child would drown while attempting to swim in a river.  In *Ferderick v. Vermilion Parish Sch. Bd.*, 00-382, p. 11 (La. App. 3 Cir. 10/18/2000); 772 So. 2d 208, 213, the Louisiana Third Circuit Court of Appeal ruled that a school board's duty to its students did not encompass the risk that a student's friend would abduct the student after a school function was cancelled and rape her.  Here, the ease of association between an allegedly defective door that opens during impact and a mother being unable to rescue her child after an accident is sufficient to satisfy proximate cause.

## III.  Conclusion

The motions in limine regarding the expert testimony of Peretti, Gilberg, Frist, and Jackson are DENIED.  [Doc. No. 78, 83, 85, & 86].  The motions in limine regarding Kennett's and Stilson's expert testimony are DENIED AS MOOT. [Doc. Nos. 84 & 87].

With regard to the parties' objections to the trial designations of deposition testimony, the Court 1) sustains Defendants' objections to the selected portions of Peretti's deposition testimony, 2) sustains Plaintiffs' objections to the selected portions of Hobbs' deposition testimony that concern whether Mrs. Hamilton was talking on her cell phone and overrules Plaintiffs' objections to the selected portions of Hobb's deposition testimony concerning how fast Mrs. Hamilton was driving, and 3) sustains Plaintiffs' objections to the selected portions of McDowell's deposition testimony that concern whether Mrs. Hamilton was driving carelessly

and aggressively.

With regard to the parties' contested issues of law, the Court rules that 1) Defendants may assert La. Rev. Stat. § 9:2798.4 as a defense, 2) GM Canada is a manufacturer under the LPLA, 3) the LPLA is the exclusive theory of recovery in this case, 4) Defendants' liability will be joint and divisible, 5) Plaintiffs' pleadings adequately placed Defendants on notice of their intent to seek recovery for Joshua's death caused by the door design, 6) Plaintiffs may offer evidence of relative injury, and 7) the allegedly defective door design proximately caused Joshua's death.

MONROE, LOUISIANA, this 23rd day of May, 2012.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**